THE DELAWARE & HUDSON COMPANY, Plaintiff, *v.* UTICA, CLINTON AND BINGHAMTON RAILROAD COMPANY and Others, Defendants.[*]

Supreme Court, Oneida County, February 13, 1940.

*Kernan & Kernan,* for the plaintiff.

*Cross & Foley,* for the defendant Utica, Clinton and Binghamton Railroad Company.

[*] Affd., 259 App. Div. 969.

KIMBALL, J. The defendant Utica, Clinton and Binghamton Railroad Company (hereinafter referred to as the defendant) on or about July 1, 1889, made, executed and delivered to the New York Trust Company, as trustee, its certain mortgage upon certain steam and street surface railroad property which was particularly described in the mortgage and which mortgage recited: " Together with all the lands, tenements and hereditaments to the above-described railroads appertaining and all and singular the franchises, privileges, rights and interests of the party of the first part, and also all leases, incomes, tolls, rents, issues and profits of said railroads, property or franchises and all rights of way, switches, turnouts, side tracks, depots, rolling stock and all other property and rights appurtenant to said railroads now owned and possessed or hereafter acquired by said party of the first part."

The mortgage was given as security for the payment of certain bonds to be issued thereunder in the amount of $800,000 with interest thereon. The bonds were issued by the defendant in the above amount, payable July 1, 1939. Pursuant to a certain lease or agreement between the plaintiff and the defendant in 1889, the plaintiff guaranteed the payment of the bonds, both principal and interest. The plaintiff is now the owner of such bonds in the principal amount of $788,000, and will, in the future, be required to take up the remaining bonds in the amount of $12,000. For the purpose of the motion now before the court, it may be taken as conceded that the plaintiff became subrogated to the rights of the former holders of the bonds.

The bonds became payable on July 1, 1939, and default was made in payment. On August 18, 1939, the plaintiff notified the trustee in writing of the default in the payment of the principal amount of the bonds and demanded that the trustee enforce the mortgage by foreclosure thereof. The trustee did not comply, and this action is brought by the plaintiff to foreclose the mortgage by reason of the default in the payment of the principal amount of the bonds secured thereby.

The defendant has moved for an order, pursuant to rule 106 of the Rules of Civil Practice, dismissing the complaint on the ground that it appears upon the face thereof that it does not state facts sufficient to constitute a cause of action. The specific ground is that the action is not maintainable by reason of section 1077-a of the Civil Practice Act and subsequently enacted statutes by which a moratorium is declared until July 1, 1940. The plaintiff contends that said section and other sections enacted in 1933 and following years, commonly known as the mortgage moratorium laws, have no application to the mortgage here sought to be foreclosed; that it

was not the intention of the Legislature that the moratorium acts should apply to such a mortgage. Thus is presented the precise question as to the applicability of said section 1077-a to a trust indenture mortgage given by a railroad corporation covering not only its real property but its franchises, rents, profits, rolling stock and perhaps other property not in the nature of real estate. There are no adjudicated cases to guide this decision.

At the Extraordinary Session of the Legislature in 1933 there were enacted chapters 793 and 794 of the laws of that year on message of necessity from the Governor. These acts became effective on August 26, 1933. They amended the Civil Practice Act so as to impose a moratorium upon the right to foreclose a mortgage upon real property for principal default and upon the right to bring action upon an indebtedness solely secured by a mortgage upon real property and contracted for simultaneously with such mortgage. A limitation was also imposed upon the right to enter deficiency judgments. These acts declared " that a serious public emergency affecting and threatening the welfare, comfort and safety of the people of the State and resulting from the abnormal disruption in economic and financial processes, the abnormal credit and currency situation in the State and Nation, the abnormal deflation of real property values and the curtailment of incomes by unemployment and other adverse conditions, exists."

The constitutionality of these acts was upheld because of their emergency character. The period of the emergency in the acts of 1933 was determined to be until July 1, 1934. Since then, the Legislature, by successive enactments, has extended the period of emergency. The last extension was accomplished by chapter 606 of the Laws of 1939 wherein it is recited: " The serious public emergency, which existed at the time of the enactment of sections ten hundred and seventy-seven-a * * * having continued, in the judgment of the Legislature, to the present time and still existing, the provisions of such chapters * * * shall, notwithstanding any provisions of such chapters, remain and be in full force and effect until July first, nineteen hundred and forty * * *."

It is common knowledge that the conditions existing in 1933 required these moratorium laws. It may be doubted whether present conditions require their continuance, at least in their present form. The Governor of this State in his message to the Legislature on January 4, 1939, said: " It has become increasingly clear that the process of extending the moratorium each year cannot go on indefinitely * * *. Some provision must be made to allow a gradual tapering off of the moratorium. There must, eventually, be normal resumption of contractual relations."

In any event, we have had a suspension of contractual relations between mortgagors and mortgagees from 1933 to 1940. It might well be a question whether the declaration by the Legislature that the emergency of 1933 has continued into 1940 squares with the facts existent in the year 1940. That question, however, is not before me on this motion and is mentioned only to indicate that the Legislature for seven years has been called upon to review the moratorium acts and has deemed it expedient and wise to declare a continuance of the 1933 emergency and to refrain from mitigating the situation in which this plaintiff finds itself. These facts are here noted for the reason that, in my opinion, they have a bearing upon the determination of the question raised by this motion.

Section 1077-a of the Civil Practice Act reads in part: " During the period of the emergency  *  *  *  no action or proceeding for the foreclosure of a mortgage upon real property, or any interest therein  *  *  *  shall be maintainable, solely for or on account of a default in the payment of principal secured by such mortgage."

The mortgage with which we are here concerned is a mortgage upon real property, although some personal property is included. The default is in the payment of principal secured by the mortgage. In the absence of judicial construction of the section by which it is held that the Legislature, in using the words " mortgage upon real property," did not mean " every mortgage upon real property," this action does not lie. It may only be maintained if it be held that the Legislature intended that the words "mortgage upon real property " should not include a mortgage upon the real property of a railroad corporation. After carefully considering the able arguments presented, I am satisfied that the Legislature did not intend to except a mortgage of this character from the provisions of section 1077-a of the Civil Practice Act. The language used is plain and unambiguous. " As a general rule, where the Legislature has made no exception to the positive terms of a statute, the presumption is that it intended to make none, and it is not the province of a court to introduce an exception by construction." (25 R. C. L. p. 972, § 224.)

It is true that the distress of farm and home owners was the paramount consideration in the minds of the Governor's committee in 1933 and in the mind of the Governor at the time of his message in that year. The Legislature, however, did not limit the effect of the statute to real property used as a home or as a farm. The moratorium acts have repeatedly been applied to business properties of various kinds. I do not think the courts, by judicial construction, can say that a business property of a certain kind is not within the intendment of the statute.

Moreover, the Legislature has observed, since 1933, the way the statute has worked out, its effects and the manner in which it has been applied. It could have changed or modified the law. It has not done so. The situation has been repeatedly called to the attention of the Legislature. As far back as 1936, the Governor in his annual message recognized that the statute applied to properties other than homes. He said: " The protection to the home owner should not, in any way, be weakened. On the other hand, it seems to me advisable to modify the application of the moratorium law to mortgages on properties other than homes so that gradually we may return to normal and free financing of such mortgages." To strain the construction of section 1077-a in the manner contended for by the plaintiff would, in my opinion, be purely judicial legislation. I cannot agree that a trust mortgage upon railroad property is to be set apart in a class by itself to the extent of construing this statute in a way different from the construction to be placed upon it in the case of a trust mortgage upon a manufacturing plant or other like property. To do so would open the door to confusion and speculation.

Furthermore, the intention of the Legislature may be gathered from the provisions of sections 1077-c and 1077-g of the Civil Practice Act (Laws of 1933, chap. 793). Section 1077-c of this act provides for the application, by order of the court, of certain surplus income from mortgaged property toward the reduction of principal indebtedness. This section could only be applicable to business properties of an income-producing nature. The Legislature recognized the fact that mortgages upon properties producing an income (i. e., business properties) could not be foreclosed for principal defaults and provided a means by which surplus income might be applied to principal indebtedness.

The title of section 1077-g of the Civil Practice Act is " Mortgages not affected." By that section the provisions of section 1077-a were made inapplicable to certain kinds of mortgages. By reason of the excepting of certain mortgages, it follows that all mortgages not so excepted should be considered within the purview of section 1077-a. " It is well settled that an exception in a statute amounts to an affirmation of the application of its provisions to all other cases not excepted and excludes all other exceptions." (25 R. C. L. p. 983, § 230.) Again the Legislature has had ample opportunity to amend section 1077-g to include a mortgage of the kind here presented. It has not done so.

The plaintiff also contends that section 1077-a is inapplicable for the reason that the mortgage is not a mortgage solely upon real property. It covers, in addition to the real property, leases, rents,

profits, rolling stock, franchises and after-acquired property. My attention is called to section 1077-b of the Civil Practice Act which prohibits, during the emergency, actions on an indebtedness " if the indebtedness originated or was originally contracted for simultaneously with such mortgage and is secured solely by such mortgage." The words " such mortgage " refer to the mortgage described in section 1077-a, *i. e.*, " a mortgage upon real property, or any interest therein." I do not think the word " solely " as used in section 1077-b can be transposed to section 1077-a, so that the latter section would be made to read " a mortgage solely upon real property." Many mortgages upon real property include personal property. If the Legislature intended to declare a moratorium on the foreclosure of mortgages *solely* upon real property, it could have so definitely stated. The word " solely " in section 1077-b limits the word " secured." . If there is security other than the real estate mortgage, an action on the debt may be maintained. " The real estate not being the ' sole ' security for the debt, the statute did not apply." (*Manufacturers National Bank of Troy* v. *Toole*, 242 App. Div. 893.) It seems to me that to construe the prohibition of section 1077-a so that it applies to mortgages " solely " upon real property, would defeat the evident purpose of the act which was to prevent the sale on foreclosure of real property at a time when there was no market and no opportunity for refinancing. It might be argued that, in effect, there is no difference between a situation where the debt is secured by both a real estate mortgage and a mortgage on personalty in separate instruments and one, as here, where the debt is secured by a mortgage upon realty and personalty in one instrument, and that, following the decision in the *Toole* case (*supra*), an action on the debt might lie. But that question is not before me. The action is to foreclose a mortgage which is a lien upon real property and for the sale of such real property. It is not an action upon the indebtedness.

As to the last point urged by the plaintiff, I think it must be held that the indebtedness originated or was originally contracted for simultaneously with the mortgage. The fact that the proceeds of the bonds were employed to retire or pay off the previous bond issue does not change the situation. The obligation of the bonds of 1889 came into being simultaneously with the mortgage of 1889. The mortgage of 1889 did not secure the former bonds.

While the position taken by the plaintiff is most persuasive and has the force of certain equities upon which to rest, I am constrained to hold that the action does not lie and that relief from the situation in which the plaintiff is rests with the Legislature.